UNITED STATES DISTRICT COURT
FILED
SEP 1 3 2023
MARY C. LOEWENGUTH, CLERK
WESTERN DISTRICT OF NY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

———————————————

STEFANIE M. ROGERS,

                                Plaintiff,

    v.

NIAGARA COUNTY, N.Y., *et al.*,

                                Defendants.

———————————————

1:22-CV-00792 JLS (MJR)

REPORT AND
RECOMMENDATION

This case has been referred to the undersigned pursuant to Section 636(b)(1) of Title 28 of the United States Code, by the Honorable John L. Sinatra, Jr. (Dkt. No. 10) Before the Court is defendants' motion to dismiss the amended complaint. (Dkt. No. 15) For the following reasons, it is recommended that defendants' motion to dismiss be granted in part and denied in part, and that plaintiff be permitted leave to replead certain portions of the amended complaint as described below.

## BACKGROUND

Plaintiff commenced this lawsuit on November 20, 2022, alleging that defendants Niagara County and the Niagara County Clerk's Office discriminated against her in the course of her employment, in violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.* ("ADA"), Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §§ 706, 794 *et seq.*, and the New York State Human Rights Law. (Dkt. No. 1) Defendants filed a motion to dismiss the complaint on December 23, 2022. (Dkt. No. 9) Plaintiff then filed an amended complaint on January 13, 2023, at which time the Court dismissed the

pending motion to dismiss as moot and set a deadline for defendants to respond to the amended complaint. (Dkt. Nos. 12, 14) The amended complaint renewed plaintiff's allegations of employment discrimination under the ADA but did not reassert any claims under the Rehabilitation Act or the New York State Human Rights Law. (Dkt. No. 12) Thus, the Rehabilitation Act and Human Rights Law claims have been abandoned by plaintiff, and plaintiff now alleges discrimination claims under the ADA only.[1]

On February 23, 2023, defendants moved, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the amended complaint for failure to state a claim. (Dkt. No. 15) Plaintiff filed a response in opposition on March 17, 2023 (Dkt. Nos. 16, 17) and defendants filed a reply on March 31, 2023 (Dkt. No. 18). The Court heard oral argument as to the motion to dismiss on April 5, 2023. (Dkt. No. 19)

## APPLICABLE LEGAL STANDARD

In order to state a claim on which relief can be granted, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*,

---

[1] In their previous motion to dismiss, defendants argued that the Rehabilitation Act claims and the New York State Human Rights Law claims were barred by an order, after hearing, from the New York State Division of Human Rights finding that plaintiff was not denied a reasonable accommodation or terminated as a result of a disability. The state administrative order does not have preclusive effect with respect to plaintiff's pending ADA claims. *See Van Ever-Ford v. New York*, 13-CV-412, 2019 U.S. Dist. LEXIS 73035 (W.D.N.Y. April 30, 2019); *Kosakow v. New Rochelle Radiology Assocs.*, 274 F.3d 706, 728 (2d Cir. 2001) (noting *in dicta* that "to the extent [plaintiffs] employment discrimination claims were based on the ADA, the determination of the [New York State Division of Human Rights] would have no effect on subsequent federal litigation."). Further, because the Court is presented with a motion to dismiss and must consider only the allegations in the amended complaint and the documents referenced therein, the Court does not consider the state administrative order for purposes of this motion. To the extent that defendants argue that "substantial weight" should be given to the factual findings of the prior administrative proceedings, this is an issue to be resolved at summary judgment.

556 U.S. 662, 663, (2009); *quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). When evaluating a motion to dismiss, a court must accept as true the factual allegations contained in a complaint and draw all inferences in plaintiff's favor. *See Allaire Corp. v. Okumus* 433 F.3d 248, 249-50 (2d Cir. 2006). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 662. "Determining whether a complaint states a plausible claim for relief...requires the...court to draw on its judicial experience and common sense." *Id.* at 679.

## AMENDED COMPLAINT

The facts set forth in the amended complaint, which the Court must accept as true for purposes of the instant motion, are as follows. Plaintiff Stefanie Rogers has been diagnosed with severe anxiety and depression. (Dkt. No. 12, ¶ 3, ¶ 16, ¶ 31) She has also been diagnosed with various neurological disorders affecting her back and legs, including spondylolisthesis and severe lumber stenosis. (*Id.*) Rogers' diagnoses substantially interfere with her ability to perform major life activities, including her ability to read, write, speak, think, communicate with others, walk, and stand. (*Id.* at ¶ 17, ¶ 32)

Niagara County is an "employer" within the meaning of the ADA. (*Id.* at ¶ 22) The Niagara County Clerk's Office is located in Niagara County and is responsible for the local administration of Niagara County's Motor Vehicle Office. (*Id.* at ¶¶ 20-21) On June 18, 2018, Rogers was hired by Niagara County as a part-time Motor Vehicle Representative. (*Id.* at ¶ 15, ¶ 26) Rogers was hired pursuant to New York Civil Service Law § 55-b, a program established to facilitate the hiring of government employees with disabilities (the "Section 55-b Program"). (*Id.* at ¶¶ 27-28) In order to qualify for hire

pursuant to the Section 55-b Program, an individual must have a physical or mental disability but be found otherwise qualified to satisfactorily perform the position for which they are hired. (*Id.* at ¶ 29) During her pre-employment medical screening on June 11, 2018, Rogers told defendants that she suffered from anxiety. (*Id.* at ¶ 30) At all times relevant to this lawsuit, Rogers was capable of performing the essential functions of her job with or without reasonable accommodation. (*Id.* at ¶ 18, ¶ 77)

Rogers was hired as a probationary employee and remained a probationary employee throughout the time period she was employed by defendants. (*Id.* at ¶ 33) Rogers received training in June and July of 2018 at the Lockport Motor Vehicle Office (the "Lockport Office"). (*Id.* at ¶ 34) On July 2, 2018, Rogers requested to continue working in the Lockport Office. (*Id.* at ¶ 35) Her request was denied. (*Id.* at ¶ 36) In July of 2018, Rogers was transferred to the North Tonawanda Motor Vehicle Office (the "North Tonawanda Office"), where she continued to work for the remainder of her employment. (*Id.* at ¶ 37)

At all times relevant to this action, Rogers resided in Lockport, New York. (*Id.* at ¶ 14) On September 17, 2018, Rogers submitted a note from her doctor stating that she "has been treated for a psychiatric illness which results in elevated anxiety and difficulty coping in some situations…[i]t is recommended that she work at the DMV [L]ockport location, not the location in North Tonawanda." (*Id.* at ¶ 39) On September 19, 2018, Rogers met with Niagara County employees Joseph Provino, Wendy Roberson, and Matthew Parish. (*Id.* at ¶ 40) Rogers disclosed her disabilities and also expressed that she was having suicidal ideations. (*Id.* at ¶ 41) Defendants proposed that, as an accommodation for her disability, Rogers be placed "at the top of the transfer list", so

that Rogers would be transferred to the Lockport Office when an opening became available. (*Id.* at ¶ 42) Rogers was never given a proposed timeline for any transfer. (*Id.* at ¶ 45) No transfer list existed at the time defendants proposed this accommodation, nor did a transfer list exist at any time during Rogers' employment. (*Id.* at ¶¶ 43-44) Upon Rogers' information and belief, defendants' offer of transfer was disingenuous in that they never had any intention of actually transferring her to the Lockport Office. (*Id.* at ¶¶ 46-47) Despite knowing that Rogers would not be transferred, defendants never explored alternative ways to accommodate Rogers' disability during the September 18, 2019 meeting. (*Id.* ¶¶ 46-47, ¶ 90)

Like Rogers, Katrina Storms also worked for Niagara County as a probationary Motor Vehicle Representative. (*Id.* at ¶ 49, ¶ 52) Also like Rogers, Storms was based at the North Tonawanda Office. (*Id.* at ¶ 51) Storms worked for defendants from May 2018 through January 2019, during approximately the same time period as Rogers. (*Id.* at ¶ 50) During her employment, Storms was asked to fill-in at the Lockport Office on multiple occasions. (*Id.* at ¶ 53) Upon Rogers' information and belief, other Motor Vehicle Representatives were also asked to fill-in at the Lockport Office. (*Id.* at ¶ 55) Despite Rogers' request to work at the Lockport Office because of her disability, Rogers was never asked to fill-in at the Lockport Office nor was she ever transferred from the North Tonawanda location. (*Id.* at ¶¶ 54, 56)

On October 4, 2018, Rogers asked Provino about the status of her transfer request. (*Id.* at ¶ 57) Provino told Rogers that the status of her request had not changed, and he did not discuss or offer any alternative accommodation. (*Id.* at ¶¶ 58-59) On December 5, 2018, Rogers again asked Provino about the status of her request.

(*Id.* at ¶ 60) Provino again told Rogers that the status of her request was unchanged, and he again failed to discuss any alternative accommodation. (*Id.* at ¶¶ 61-62)

As a result of her neurological disabilities that affected her back and legs, Rogers took a leave of absence from work from January 7, 2019 through January 14, 2019. (*Id.* at ¶ 63) Niagara County terminated Rogers employment on February 1, 2019. (*Id.* at ¶ 64) In the termination letter, Niagara County stated that the reason for termination was "unsatisfactory performance during [Rogers'] probationary period." (*Id.* at ¶ 65)

Rogers received two performance evaluations during her employment, one for the period of June 18, 2018 through September 7, 2018, and one for the period of September 8, 2018 through October 31, 2018. (*Id.* at ¶ 67) According to Rogers, both evaluations indicated that her performance was satisfactory. (*Id.* at ¶ 66) Indeed, the first evaluation, dated September 11, 2018, was positive.[2] (Dkt. No. 15-3) Rogers' supervisor noted that her work was neat; that she followed instructions and was a fast leaner; and that she had good customer service skills as well as a good attitude. (*Id.*) It was noted that while Rogers made some errors, the errors were "rookie mistakes and correctable." (*Id.*) Rogers' second performance review, dated December 5, 2018, was not as favorable. (*Id.*) Rogers' supervisor noted that Rogers was still making correctable mistakes and that "1/2 of mistakes were critical and may have been prevented had [Rogers] been more thorough." (*Id.*) Rogers' supervisor was concerned that Rogers was

---

[2] Plaintiff did not include copies of her performance evaluations in her amended complaint. However, defendants attach copies of plaintiff's two performance evaluations in their motion to dismiss. Because plaintiff specifically references, and relies on, her performance evaluations in her amended complaint, the Court may properly consider these documents in evaluating the instant motion to dismiss. "In deciding a motion to dismiss, the court may consider any written documents that are attached to the complaint, incorporated by reference, or integral to it." *Lillico v. Roswell Park Comprehensive Cancer Ctr.*, 21-CV-836, 2023 WL 1784670 at *4, n. 7 (W.D.N.Y. Feb. 6, 2023); *accord Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004).

not retaining all of the information necessary to perform her duties. (*Id.*) It was noted that Rogers needed to be more diligent in the review of her paperwork in order to prevent errors. (*Id.*) It was concluded that Rogers' supervisor would "re-evaluate and determine if more training [was] needed." (*Id.*)

No reasonable accommodation was in place when Rogers' performance reviews were conducted or when her employment was terminated. (*Id.* at ¶¶ 91-92) Rogers alleges that defendants violated the ADA by refusing to provide her with a reasonable accommodation, failing to engage in the interactive process, and failing to assess her ability to perform the essential functions of her job with a reasonable accommodation in place. (*Id.* at ¶ 95) Rogers further alleges that defendants terminated her in violation of the ADA, and that the proffered reasons for termination were illegitimate and a pretext for discrimination. (*Id.* at ¶ 9, ¶ 96)

**DISCUSSION**

*The Niagara County Clerk's Office*

Defendants submit that the Niagara County Clerk's Office must be dismissed from the lawsuit because it is a municipal subdivision of Niagara County with no separate legal existence. The Court agrees.

According to the amended complaint, the Niagara County Clerk's Office is part of Niagara County and is responsible for the local administration of Niagara County's Motor Vehicle Office. "Under New York law, a department of a municipal entity is merely a subdivision of the municipality and has no separate legal existence." *Hoisington v. County of Sullivan*, 55 F. Supp. 2d 212, 214 (S.D.N.Y. 1999) Further, "where both the municipality and the municipal department have been named as defendants, courts

routinely have dismissed the claims against the department." *In re Dayton*, 786 F. Supp. 2d 809, 818-19 (S.D.N.Y. 2011) (collecting cases). Because the Niagara County Clerk's Office is a department within the municipal entity of Niagara County, and because Niagara County is also a defendant in this lawsuit, the claims against the Niagara County Clerk's Office should be dismissed. *See Paul v. Kearns*, 596 F. Supp. 3d 491 (W.D.N.Y. Mar. 30, 2022) ("Because [plaintiff] has in effect sued both the municipality and the municipal department—that is, Erie County and its Pistol Permit Office— [plaintiff's] claim against Erie County Pistol Permit is dismissed.").

Thus, it is recommended that the Niagara County Clerk's Office be dismissed as a defendant from the amended complaint and that the lawsuit proceed against Niagara County only.

### *Failure to Provide Reasonable Accommodation*

An employer may violate the ADA by failing to provide a reasonable accommodation. *See McMillan v. N.Y.C.*, 711 F.3d 120, 125-26 (2d. Cir. 2013). To establish a *prima facie* claim of failure to accommodate, a plaintiff must show that: (1) she is a person with a disability under the meaning of the ADA; (2) an employer covered by the ADA had notice of her disability; (3) with reasonable accommodation, she could perform the essential functions of the job at issue; and (4) the employer refused to make such accommodations. *Id.*; *accord McBride v. BIC Consumer Prods. Mfg. Co., Inc.*, 583 F.3d 92, 97 (2d Cir. 2009). For the reasons explained below, the Court finds that plaintiff has not sufficiently pled that she has a disability within the meaning of the ADA or that she could perform the essential functions of her job with a reasonable accommodation. However, the Court recommends that plaintiff be given an opportunity to replead her

complaint to include additional information about the nature of her alleged impairments and how the reasonable accommodation she requested, namely a transfer to the Lockport Office, would have allowed her to perform the essential functions of a Motor Vehicle Representative.

Courts conduct the following three-step process to determine whether a plaintiff suffers from a disability as defined by the ADA: "(1) whether plaintiff had an impairment; (2) whether the impairment affected a 'major life activity' within the meaning of the ADA; and (3) whether that major life activity was substantially limited by the impairment." *Mazza v. Bratton*, 108 F. Supp. 2d 167, 173 (E.D.N.Y. 2000); *accord Bragdon v. Abbott*, 524 U.S. 624, 631 (1998). Here, Rogers alleges that she has been diagnosed with severe anxiety, depression, and various neurological conditions that affect her back and legs. These allegations, taken as true, plausibly establish that Rogers suffers from impairments under the ADA. *See* 29 C.F.R. § 1630.2(h); *Zuckerman v. GW Acquisition LLC*, 20-CV-8742, 2021 U.S. Dist. LEXIS 178873 (S.D.N.Y. Sept. 20, 2021) (finding "generalized anxiety disorder" qualifies as an impairment under the ADA). Rogers also generally alleges that these impairments affect her ability to engage in the major life activities of thinking, communicating, speaking, reading, writing, walking, and standing. *See* 42 U.S.C. § 12102(2)(A); *Capobianco v. City of New York*, 422 F.3d 47, 56 (2d Cir. 2005) ("Major life activities are activities that are of central importance to daily life [and] EEOC regulations define major life activities to include functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working.") (internal quotations and citations omitted).

However, even at the motion to dismiss stage, the inquiry does not end here. The Second Circuit has explained that, in order to plausibly plead a disability under the ADA, a plaintiff must allege facts as to *how* his or her impairments substantially limit their major life activities. *See Morey v. Windsong Radiology Group, P.C.*, 794 Fed. Appx. 30 (2d Cir. Dec. 12, 2019) Stated another way, where a plaintiff fails to "detail the frequency, duration, or severity of [her] alleged [disability], and how [it] affected [her] at the time of [her] employment," her claim for disability discrimination must fail. *Rodriguez v. New York City Dept. of Educ.*, 21-CV-3561, 2022 WL 4484576 at *5 (S.D.N.Y. Sept. 26, 2022). *See also DeAngelo v. Yellowbook Inc*., 105 F. Supp. 3d 166, 174-75 (D. Conn. 2015) ("A medical diagnosis alone does not necessarily demonstrate that a plaintiff had an impairment under the ADA. Rather, the ADA requires those claiming the Act's protection to prove a disability by offering evidence that the extent of the limitation caused by their impairment in terms of their own experience is substantial.") (citations and internal quotations omitted).

Here, the amended complaint does not sufficiently allege *how* Rogers' mental health conditions and various neurological disorders actually affected her ability to think, communicate, read, write, speak, stand, and walk during the period of time she was employed by Niagara County. Rogers offers little to no explanation of the specific symptoms she suffered as a result of her impairments, nor does she explain how any such symptoms limited her ability to engage in the major life activities listed in the amended complaint. Likewise, Rogers does not provide any factual detail as to the frequency, duration, or severity of her limitations. Instead, her allegations merely track the language of the statute by stating, in a general and conclusory way, that her

impairments of anxiety, depression, and various neurological disorders "substantially interfere with [her] major life activities, including reading, writing, speaking, thinking, communicating with others, walking, and standing."[3] (Dkt. No. 12, ¶ 73)

Courts in this Circuit have held that vague and conclusory allegations of a disability, similar to those asserted by Rogers here, are insufficient to plead a claim under the ADA. *See e.g., Hallgren v. Bell Ad Corp.*, 99 Civ. 11937, 2000 U.S. Dist. LEXIS 7630 (S.D.N.Y. May 30, 2000) (granting dismissal of ADA claim with leave to replead where plaintiff "merely parrot[ed] the statutory language stating that her impairments substantially limit one or more of [her] major life activities...[r]ather than specify[ing] how her ailments affect her major life activities"); *Kelly v. N.Y. State Office of Mental Health*, 200 F. Supp. 3d 378, (E.D.N.Y. 2016) ("Conclusory statements regarding sleep difficulties are [] insufficient to adequately allege a substantial limitation [where plaintiff] does not describe in any detail the frequency, duration or severity of [her] sleep impairment or actually state that her alleged impairments cause [her] sleep impairment."); *Cain v. Mandl Coll. of Allied Health*, 14 Civ. 1729, 2017 WL 2709743, at *4 (S.D.N.Y. June 22, 2017) (dismissing complaint where the plaintiff alleged only that post-traumatic stress disorder substantially limited her ability to eat, sleep, work, and

---

[3] The amended complaint also references a note from Rogers' doctor stating that Rogers has "difficulty coping in some situations" because of her anxiety. In addition, Rogers alleges that she experienced suicidal ideations and that she took a leave of absence from work because of her neurological issues. The Court acknowledges that it is logical to assume that the mental and physical impairments alleged by plaintiff would affect her ability to work as well as to engage in other major life activities. Indeed, plaintiff has come close to alleging that she suffered from a disability under the meaning of the ADA. However, in light of the case law cited herein, plaintiff must provide the Court with an explanation as to how her medical diagnoses actually limited her ability to engage in certain activities, as well as the frequency, duration, and severity of those limitations. *See Missick v. City of New York*, 707 F. Supp. 2d 336, 353 n.9 (E.D.N.Y. 2010) (holding that a doctor's note stating plaintiff should only do "limited work" and not get "stressed out" was insufficient to show a disability).

attend school, because "[v]ague, conclusory assertions without details on how her condition actually affects a major life activity are insufficient."); *Laface v. E. Suffolk Boces*, 2:18-CV-1314, 2020 U.S. Dist. LEXIS 85343 (E.D.N.Y. May 14, 2020) (dismissing ADA claim at the pleadings stage where plaintiff made conclusory allegations that "his mold allergy substantially limits his ability to work, breathe and perform manual tasks…without any explanation as to how he was so limited."); *Shine v. New York City Hous. Auth.*, 19-CV-04347, 2020 U.S. Dist. LEXIS 171403 (S.D.N.Y. Sept. 18, 2020) (noting that "courts in this Circuit have established that plaintiffs must plead more than vague or conclusory allegations regarding 'difficulty' or 'trouble' conducting a major life activity.").[4] For these reasons, the Court finds that plaintiff's failure to accommodate claim should be dismissed for failure to sufficiently allege a disability under the ADA.

Rogers' failure to accommodate claim likewise falls short in that the amended complaint does not adequately allege that Rogers could perform the essential functions

---

[4] The Court rejects plaintiff's argument that she has plausibly alleged a disability under the ADA because "courts have recognized that anxiety is a disability that affects major life functions and activities." Indeed, there are certain impairments which will "virtually always be found to impose a substantial limitation on a major life activity." *See* 29 C.F.R. § 1630.2(j)(3). However, none of Rogers' alleged impairments, including her anxiety, qualify in this regard. *See Bluch v. 300 West 22 Realty*, 21-CV-9747, 2023 U.S. Dist. LEXIS 2092 (S.D.N.Y. Jan. 5, 2023) (bare allegations of anxiety, hypertension and hypothyroidism are insufficient to plead a disability under the ADA). Moreover, the cases cited by plaintiff in support of this argument are distinguishable. In *Freeman v. Krisits,* 16-CV-06668, 2017 WL 475679 at *5 (W.D.N.Y. Feb. 6, 2017), plaintiff specifically alleged that his anxiety caused him "tension, headaches, difficulty concentrating, episodes of confusion, and difficulties with decision making" and that he took leave for extended periods of time as a result. In *Williams v. AT&T Mobility Services,* LLC, 186 F. Supp. 3d 816 (W.D. Tenn. 2016), plaintiff alleged that her depression and anxiety caused her abnormal interrupted thoughts and cognitive impairment resulting in the need for flexible start times, ten-minute breaks every two hours, and a modified break time for anxiety attacks. Differently here, Rogers offers no such specific factual allegations about the symptoms she experiences as a result of her anxiety, nor does she explain how such symptoms impacted her ability to work or engage in other major life activities such as communicating with others, reading, writing, and speaking.

of her job as a Motor Vehicle Representative with a reasonable accommodation. To be sure, Rogers does allege that she requested a reasonable accommodation in the form of a transfer to the Lockport Office. *See* 42 U.S.C. § 12111(9)(B) ("reasonable accommodation" may include "reassignment to a vacant position."). Moreover, the amended complaint contains general and conclusory allegations that Rogers could perform the essential functions of her position with a reasonable accommodation. However, notably absent from the pleading is any information as to *how or why* working at the Lockport Office, as opposed to the North Tonawanda Office, where plaintiff was assigned, would have been preferable in light of Rogers' alleged physical and mental impairments.

Indeed, Rogers alleges that her doctor recommended that she work at the Lockport Office because of a psychiatric illness that resulted in elevated anxiety and difficulty coping. However, the pleading is devoid of any explanation as to how a transfer to the Lockport Office would have alleviated or reduced Rogers' mental health symptoms in such a way as to allow her to perform the essential functions of her position.[5] Without any details to connect plaintiff's accommodation request with her alleged physical and/or mental impairments, the Court is left to wonder how a transfer to the Lockport Office would have made any appreciable difference in Rogers' ability to adequately perform her job duties. Thus, the Court finds that plaintiff has not sufficiently pled that she was able to perform the essential functions of her job with a reasonable accommodation. *See Zabar v. N.Y. City Dep't of Educ.*, 18 Civ. 6657, 2020 U.S. Dist.

---

[5] Plaintiff alleges that, at all relevant times to this lawsuit, she resided in Lockport, New York. Thus, it is possible that plaintiff's request for a transfer to the Lockport Office in order to accommodate her impairments was somehow connected to her commute. However, the amended complaint contains no information in this regard, and thus such a finding would only be speculation on the part of the Court.

LEXIS 83840 (S.D.N.Y. May 12, 2020) (plaintiff failed to allege that she could perform the essential functions of her position with a reasonable accommodation, resulting in dismissal of her ADA claim, where plaintiff did not allege how her depression and anxiety affected her ability to perform her job nor did she allege how her requested accommodations would allow her to perform the essential functions of her position); *Forgione v. City of New York*, 11-CV-5248, 2012 U.S. Dist. LEXIS 130960 (E.D.N.Y. Sept. 13, 2012) (complaint dismissed for failure to allege a reasonable accommodation claim under the ADA where, *inter alia*, plaintiff did not explain how the leave he requested would allow him to perform the essential functions of his job).

Upon granting a motion to dismiss, leave to replead should be given unless it is apparent that plaintiff is unable to allege any facts sufficient to support her claim. *Cortec Industries, Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("It is the usual practice upon granting a motion to dismiss to allow leave to replead. Although leave to replead is within the discretion of the district court, refusal to grant it without any justifying reason is an abuse of discretion."). *See also Lillico v. Roswell Park Comprehensive Cancer Ctr.*, 21-CV-836, 2022 U.S. Dist. LEXIS 104215 (W.D.N.Y. June 10, 2022) (granting motion to dismiss disability discrimination and failure to accommodate claim but allowing plaintiff to replead, even though leave was not requested, since leave to amend should be "freely given" whenever a complaint is dismissed).

It appears to the Court that plaintiff likely could allege sufficient facts to plead a disability under the ADA as well as to explain how a transfer to the Lockport Office would have accommodated her impairments in such a way as to allow her to perform

the essential functions of a Motor Vehicle Representative. Rogers was hired pursuant to a civil service program designed to provide job opportunities to individuals with physical and mental disabilities. Rogers disclosed that she suffered from a mental impairment at the time of hire and later submitted a doctor's note confirming the diagnosis. Further, Rogers has generally alleged that her anxiety, depression, and neurological disorders affect her ability to communicate, read, write, think, speak, walk, and stand. She references a doctor's note requesting that she be transferred to the Lockport Office because of her anxiety. However, plaintiff has failed to take the final steps of explaining (1) how her life activities were actually impaired by her physical and mental health conditions; and, relatedly (2) how a transfer to the Lockport Office would have accommodated her impairments, thereby allowing her to perform the essential functions of her job. These are defects which can likely be remedied by amending the pleading. *See Hellgren*, 2000 U.S. Dist. LEXIS 7630, *3 (dismissing ADA claim for failure to specify how major life activities are impaired, but allowing leave to replead, since "[a]lthough one can easily infer how chronic conditions such as asthma, sinusitis, and Rosacea might inhibit major life activities, the complaint needs to spell it out[.]").

The Court further finds that allowing leave to replead is appropriate here because plaintiff has sufficiently alleged the remaining elements of a failure to accommodate claim. Rogers alleges, and defendant does not dispute, that Niagara County is a covered employer within the meaning of the ADA. She sufficiently alleges that Niagara County had notice of her disability because (1) they hired her pursuant to the Section 55-b Program; (2) she disclosed, at the time of hire, that she suffered from anxiety; and (3) she provided a doctor's note indicating that she needed an accommodation due to a

psychiatric illness. Rogers further alleges that Niagara County effectively denied her request for a reasonable accommodation by telling her that she was "at the top of the transfer list" when, in reality, no such list existed and defendant had no intention of ever transferring her to the Lockport Office. In addition, Rogers alleges that by making knowingly false promises of a transfer and then declining to explore the possibility of other reasonable accommodations, Niagara County failed to engage in the interactive process as required by the ADA.

The Court rejects defendant's argument that plaintiff's failure to accommodate claim fails because she has not established that a vacant position existed at the Lockport Office at the time of her accommodation request. Rogers alleges that during and around the time she requested a transfer to the Lockport Office, another probationary Motor Vehicle Representative assigned to the North Tonawanda Office, Katrina Storms, was frequently asked to fill-in at the Lockport Office. Rogers further alleges that other Motor Vehicle Representatives were also asked to fill-in at the Lockport Office during the relevant time period. These allegations, taken as true and viewed in a light most favorable to plaintiff, suggest that it was possible for Rogers to work, at least some of the time, at the Lockport Office, as she requested. Further, plaintiff's allegation that work was available at the Lockport Office, at the time of her accommodation request, is minimally sufficient to raise a question of fact as to whether it would have been feasible for Niagara County to have granted Roger's transfer request.

In order to ultimately succeed, Rogers will bear "both the burden of production and persuasion on the question of whether a suitable vacancy existed at the time [the]

transfer was sought." *McBride*, 583 F.3d at 97. However, at the pleadings stage, Rogers need not provide evidence or allege specific facts establishing every element of a *prima facie* case of disability discrimination. *See Bakeer v. Nippon Cargo Airlines, Co.*, 09-CV-3374, 2011 U.S. Dist. LEXIS 90102 (E.D.N.Y. July 25, 2011). Rogers' allegations regarding the availability of work at the Lockport Office, while not necessarily the strongest or most persuasive set of facts, are minimally sufficient to "allow the court in substance to infer elements of a *prima facie* case." *King v. United States Sec. Assocs.*, 11 Civ. 4457, 2012 U.S. Dist. LEXIS 133339 (S.D.N.Y. Aug. 22, 2012). Indeed, Niagara County's arguments regarding the availability of a vacant position or the reasonableness of a transfer may well prove successful on summary judgment. However, at this preliminary stage of the litigation and without an opportunity for discovery, these arguments are premature. *See Smith v. New York City Dep't of Educ.*, 18 Civ. 8545, 2019 U.S. Dist. LEXIS 204645 (S.D.N.Y. Nov. 22, 2019) ("[The determination of whether a requested accommodation is reasonable requires a fact-intensive inquiry that is ill-suited for resolution on a motion to dismiss."); *Torres v. New York City Dep't of Educ.*, 18-CV-2156, 2019 WL 2124891, at *7 (E.D.N.Y. May 15, 2019) (denying defendant's motion for judgment on the pleadings on plaintiff's failure to accommodate claim because whether "[p]laintiff's request to transfer was reasonable or not" is "'a fact-specific inquiry,'" and "therefore not properly disposed of at the pleadings stage"); *Goonan v. Federal Reserve Bank of New York*, 916 F. Supp. 2d 470, 482 (S.D.N.Y. 2013) ("At the motion to dismiss stage, the [defendant] bears the weighty burden of showing that the fact-intensive inquiry prerequisite to a finding of reasonable

accommodation falls completely in its favor.").[6]

Defendant also contends that because the amended complaint indicates that Niagara County agreed to a transfer "as soon as a position became available," Rogers cannot show that Niagara County either denied her a reasonable accommodation or otherwise failed to engage in the interactive process. The Court rejects this argument. The ADA contemplates an "informal interactive process" by which employers and employees work together to assess whether an employee's disability can be reasonably accommodated. *See* 29 C.F.R. § 1630.2(o)(3); *Jackan v. N.Y.S. Dep't of Labor*, 205 F.3d 562, 566 (2d Cir. 2000). Liability for failure to provide a reasonable accommodation ensues when the employer is responsible for a "breakdown in [the interactive] process." *Thompson v. City of New York*, 03-CV-4182, 2006 U.S. Dist. LEXIS 59472 (S.D.N.Y. Aug. 10, 2006). "An employer impedes the [interactive] process when: the employer knows of the employee's disability; the employee requests accommodations or assistance; the employer does not in good faith assist the employee in seeking accommodations; and the employee could have been reasonably accommodated but for the employer's lack of good faith." *See Bohen v. Potter*, 04-CV-1039, 2009 U.S. Dist. LEXIS 23717 (W.D.N.Y. Mar. 23, 2009) (internal citations omitted).

Here, Rogers informed Niagara County of her disability and requested an accommodation in the form of transfer. Niagara County responded that Rogers was "at the top of the transfer list" and that she would be transferred when a position became

---

[6] Defendant argues that plaintiff has not sufficiently alleged how "filling-in" or covering absences at the Lockport Office would have constituted a reasonable accommodation. The Court finds that plaintiff's allegations about the availably of work at the Lockport Office, combined with her repeated requests to work there, are sufficient to raise her claim for relief above a speculative level. As the case proceeds to discovery, more information will be necessary as to the reasonableness of such an accommodation and whether such an accommodation would have allowed plaintiff to perform the essential functions of her job.

available. Rogers alleges that when defendant made this statement, no transfer list existed and defendant never actually intended to transfer her. Moreover, despite knowing that a transfer would not be granted, Niagara County did not ask Rogers about other potential accommodations. Rogers further alleges that when she later inquired, repeatedly, about the status of her request, Niagara County (1) told her that the status was unchanged and (2) did not broach the subject of alternative accommodations, even though defendant knew that Rogers would not be transferred. Thus, even if defendant is correct that no vacant position existed at the Lockport Office, plaintiff has still plausibly alleged that she was denied a reasonable accommodation when defendant told her that she would be transferred but never intended to do so.

Plaintiff certainly bears the burden of proving these allegations as the case proceeds. However, they are minimally sufficient, at the motion to dismiss stage, to allege that Niagara County was responsible for a "breakdown in the interactive process" which resulted in a failure to accommodate Rogers' disability. *See Bohen*, 2009 U.S. Dist. LEXIS 23717, *35-39 (a party's failure to accurately communicate during the interactive process may constitute bad faith); *Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 218-19 (2d Cir. 2001) ("[S]teps toward engaging in an interactive process" include "requesting information about the condition and what limitations the employee has…showing some sign of having considered the employee's request, and offering and discussing available alternatives when the request is too burdensome."); *Thompson*, 2002 WL 31760219 ("[A] party that fails to communicate, or withholds important information solely within the knowledge of that party, can be found to have obstructed the [interactive] process in bad faith.").

For these reasons, the Court finds that (1) to the extent plaintiff has failed to sufficiently allege that she suffers from a disability within the meaning of the ADA and that she was able to perform the essential functions of her position with a reasonable accommodation, defendant's motion to dismiss the failure to accommodate claim should be granted; and (2) plaintiff should be given leave to replead these portions of her claim.

*Discriminatory Termination*

Rogers also claims that Niagara County unlawfully terminated her employment in violation of the ADA. To establish a *prima facie* case of disability discrimination under the ADA, a plaintiff must demonstrate that "(1) [her] employer is subject to the ADA; (2) [she] was disabled within the meaning of the ADA; (3) [she] was otherwise qualified to perform the essential functions of [her] job, with or without reasonable accommodation; and (4) [she] suffered [an] adverse employment action as a result of her disability." *Sista v. CDC Ixis North America, Inc.*, 445 F.3d 161, 169 (2d Cir. 2006). For the following reasons, the Court finds that plaintiff has sufficiently stated a claim of disability discrimination.

With regard to the first element, Rogers alleges, and defendant does not dispute, that Niagara County is subject to the ADA. As to the second prong, the ADA defines "disability" as: (a) a physical or mental impairment that substantially limits one or more of the major life activities of an individual; (b) a record of such impairment; or, (c) being regarded as having such an impairment. *See* 42 U.S.C. § 12102(1). Thus, in asserting her claim of disability discrimination, Rogers may rely on the theory that defendant

regarded her as disabled within the meaning of the ADA.[7] An individual is regarded as disabled if she has "an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A). *See also Jordan v. Forfeiture Support Assocs.*, 928 F. Supp. 2d 588, 605 (E.D.N.Y. 2013) (a plaintiff who is "regarded as" disabled is protected under the ADA even if they are not actually disabled); *Hilton v. Wright*, 673 F.3d 120, 129 (2d Cir. 2012) (plaintiff bringing "regarded as" claim "[is] only required to raise a genuine issue of material fact about whether [the defendant] regarded [her] as having a mental or physical impairment" and need not "present evidence of how or to what degree [the defendant] believed the impairment affected [her]").

According to the amended complaint, Rogers was hired pursuant to a municipal civil service program specifically designed to facilitate the hiring of government employees with physical and/or mental disabilities. Also, during her pre-employment health screening, Rogers disclosed to Niagara County that she suffered from anxiety. Rogers later disclosed her disabilities to her supervisors and indicated that she experienced suicidal ideations. Rogers also provided defendant with a doctor's note requesting a reasonable accommodation as a result of a psychiatric illness that caused elevated anxiety and "difficulty coping." Finally, Rogers took a leave of absence for approximately seven days as a result of various neurological conditions that affect her back and spine. These allegations, taken as true and viewed in the light most favorable

---

[7] The Court notes that Rogers is unable to base her failure to accommodate claim on the premise that Niagara County regarded her as disabled. *See Benson v. Ruttura & Sons Construction Co., Inc.*, 20-CV-0853, 2021 WL 1238712 at *5 (E.D.N.Y. Mar. 31, 2021) ("regarded as" disabled claims are not actionable under a failure to accommodate theory); *Morris v. Town of Islip*, 12-CV-2984, 2014 U.S. Dist. LEXIS 133168 (Sept. 22, 2014) ("no failure to accommodate claim can be made, as a matter of law, for an individual who was 'regarded as' disabled, rather than who was actually disabled").

to plaintiff, are minimally sufficient to create a reasonable inference that Niagara County regarded Rogers as disabled. *See e.g., Niemczur v. Coral Graphics Servs.*, 04-CV-5452, 2005 U.S. Dist. LEXIS 30367 (E.D.N.Y. Nov. 15, 2005) (inferring that defendant regarded plaintiff as disabled where plaintiff was injured on the job, repeatedly requested a less strenuous position, suffered a progressive physical deterioration while working for defendant and completed an IME "in hopes of demonstrating a disability"); *Freeman v. Kiristis*, 16-CV-06668, 2017 WL 475679 (W.D.N.Y. Feb. 6, 2017) (plaintiff alleged a plausible claim that his employer regarded him as disabled where plaintiff notified his employer of his anxiety issues, requested an accommodation because of those issues, and took extended leave because of his "chronic condition"); *Manz v. Gaffney*, 56 Fed. Appx. 50 (2d Cir. 2003) (remanding for a determination as to whether a defendant regarded plaintiff as disabled within the meaning of the ADA, where, *inter alia*, plaintiff was certified as disabled under Section 55-a of the New York Civil Service Law prior to his hire by the Suffolk County Department of Social Services).[8]

For the third prong, plaintiff alleges that she had the "skill, experience, and expertise for the position she held and was able to perform the essential functions of her job with or without accommodations." (Dkt. No. 12, ¶ 18) The amended complaint further alleges that, in order to qualify for hire pursuant to the Section 55-b Program, plaintiff had to be found "otherwise qualified to perform satisfactorily the duties of [her]

---

[8] The Court notes that plaintiff will also satisfy the second prong of her *prima facie* claim of disability discrimination if she successfully repleads the complaint to allege that she is disabled under the ADA by including details as to how her physical and mental impairments of anxiety, depression and neurological disorders had a substantial impact on her major life activities of communicating, thinking, writing, reading, speaking, walking, and standing.

position." (*Id.* at ¶ 29) Thus, Rogers sufficiently alleges that she was otherwise qualified for the position of Motor Vehicle Representative.[9]

As to the final prong, Rogers has alleged that she suffered an adverse employment action, namely termination. *See Terry v. Aschroft*, 336 F.3d 128 (2d Cir. 2003) (an example of a materially adverse employment action includes termination of employment). Rogers has also sufficiently pled that Niagara County terminated her under circumstances giving rise to an inference of discrimination. As explained above, Rogers requested an accommodation due to a mental health impairment on September 17, 2018. She reiterated that request on October 4, 2018 and December 5, 2018. Rogers then took a leave of absence related to a physical health impairment from January 7, 2019 through January 14, 2019. Rogers was terminated approximately two weeks later, on February 1, 2019. The close temporal proximity between Rogers' termination and her accommodation requests as well as her disability-related absences is minimally sufficient to infer that Niagara County terminated her as the result of an actual or perceived disability. *See Naik v. Modern Mktg. Concepts*, 3:17-CV-0613, 2018 U.S. Dist. LEXIS 144822 (N.D.N.Y. Aug. 27, 2018) (the immediate temporal proximity between plaintiff's request for leave for his disability and his termination is sufficient to permit an inference of causation); *Behringer v. Lavelle Sch. For the Blind*, 08 Civ. 4899, 2010 U.S. Dist. LEXIS 134440 (S.D.N.Y. Dec. 17, 2012) (without any direct proof, the timing or sequence of events leading up to a plaintiff's termination can be a

---

[9] The Court notes that plaintiff's allegations that she could perform her duties with *or without* reasonable accommodation and that she was otherwise qualified for the position of Motor Vehicle Representative are minimally sufficient to survive a motion to dismiss the disability discrimination claim. In the alternative, plaintiff will also satisfy this prong of her *prima facie* claim by successfully repleading the complaint to include specific facts as to how a transfer to the Lockport Office would have allowed her to perform the essential functions of her position with the benefit of a reasonable accommodation.

circumstance that gives rise to an inference of discrimination); *Telesford v. N.Y.C. Dep't of Educ.*, 16-CV-819, 2018 U.S. Dist. LEXIS 250624 (E.D.N.Y. Sept. 17, 2018) (plaintiff sufficiently alleged that he was terminated as a result of a disability where the adverse actions occurred while he was on leave for work-related injuries and a few days after sending a request for an accommodation).[10]

Defendant contends that plaintiff has failed to allege that she was terminated as a result of her disability because her performance evaluations "do not give rise to an inference of discrimination." Indeed, Rogers' last performance review listed a number of issues with Rogers' work performance and indicated that Rogers' supervisor would "re-evaluate and determine if more training was needed." However, nowhere was it stated, in the review, that Rogers would be terminated as a result of poor job performance. Thus, while the December 5, 2018 evaluation was certainly unfavorable in many respects, it does not serve as conclusive proof that Niagara County terminated Rogers as a result of poor performance.

Moreover, while not expressly stating as much, Niagara County has essentially pointed to Rogers' performance issues as a nondiscriminatory reason for her termination. To be sure, this evidence will be highly relevant at the summary judgment

---

[10] Niagara County argues that because it knew of plaintiff's alleged disabilities at the time of her hire, plaintiff cannot logically demonstrate that defendant fired her because of an actual or perceived disability. Indeed, courts in this Circuit recognize that "[w]hen the same actor hires a person known to be in a protected class and later takes an adverse employment action, it is difficult to impute to [the actor] an invidious motivation that would be inconsistent with the decision to hire." *Martin v. State University of New York*, 704 F. Supp. 2d 202, 226 (E.D.N.Y. 2010). This inference may pose a substantial hurdle for plaintiff to overcome at the dispositive motion stage, especially if Niagara County can demonstrate that the same individual who made the decision to hire Rogers was also responsible for the decision to terminate her. However, the same actor inference "is typically applied at summary judgment" and "even then, its application is not mandatory." *Colbert v. FSA Store, Inc.*, 19-CV-9828, 2020 U.S. Dist. LEXIS 73985 (S.D.N.Y. April 27, 2020). Thus, the Court will not apply such an inference to bar plaintiff's claims at this early stage.

stage, under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) (once a plaintiff successfully makes out a *prima facie* case of discrimination, the burden shifts to the employer to demonstrate a legitimate, nondiscriminatory reason for the adverse employment action, which could potentially defeat a plaintiff's claim). However, Rogers is not required to meet her *McDonnell Douglas* burden at this stage of the litigation, and "any inquiry into any non-discriminatory reasons for a defendant's conduct is reserved for summary judgment or trial." *Levy v. Legal Aid Soc'y*, 408 F. Supp. 3d 209 (E.D.N.Y. Sept. 30, 2019). *See also Franklin v. Whole Foods Mkt. Grp., Inc.*, 10-CV-4935, 2022 U.S. Dist. LEXIS 14594 (S.D.N.Y. Jan. 26, 2022) ("alleged legitimate reasons for [an] adverse employment action cannot be considered on a motion to dismiss); *Brown v. Daikin Am., Inc.*, 756 F.3d 219 (2d Cir. 2014) ("Whether there existed non-pretextual, non-discriminatory explanations for the defendants' employment decisions — a question as to which the defendants bear the burden of production...is not properly decided on a motion to dismiss for failure to state a claim."); *Mackenzie v. New York City Dep' of Educ.*, 21-CV-5711, 2023 U.S. Dist. LEXIS 55773 (S.D.N.Y. Mar. 30, 2023) ("[A]n employer's reasons for termination...i.e., poor performance reviews... should not be considered at the pleading stage, particularly where, as here, the cited legitimate grounds are themselves alleged to be the product of discriminatory actions.").[11]

"On a motion to dismiss, the question is not whether a plaintiff is *likely* to prevail, but whether the well-pleaded factual allegations *plausibly* give rise to an inference of unlawful discrimination, *i.e.*, whether plaintiff[] allege[s] enough to nudge [her] claims

---

[11] Plaintiff does not seem to argue that her performance evaluations were fabricated. Instead, she argues that they were satisfactory and also that they reflect a discriminatory animus to the extent that defendant relied on them without the benefit of a reasonable accommodation.

across the line from conceivable to plausible." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015) (emphasis included) (internal citations omitted). Here, Rogers' pleadings suffice to make the "minimum inference of discriminatory motivation" needed for her claim of disability discrimination to proceed to discovery. *See Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015) ("facts alleged in the complaint need not give plausible support to the ultimate question of whether the adverse employment action was attributable to discrimination.").

## CONCLUSION

For the foregoing reasons, it is recommended that defendant's motion to dismiss the amended complaint be denied as to the disability discrimination claim and granted as to the failure to accommodate claim, but that plaintiff be permitted leave to replead her failure to accommodate claim in the manner discussed above. (Dkt. No. 15) It is further recommended that the Niagara County Clerk's Office be dismissed as a defendant from the case and that the lawsuit proceed against Niagara County only.

Pursuant to 28 U.S.C. §636(b)(1), it is hereby **ORDERED** that this Report and Recommendation be filed with the Clerk of Court.

Unless otherwise ordered by Judge Sinatra, any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a), and 6(d) of the Federal Rules of Civil Procedure, and W.D.N.Y. L. R. Civ. P. 72. Any requests for an extension of this deadline must be made to Judge Sinatra.

***Failure to file objections, or to request an extension of time to file objections, within fourteen days of service of this Report and Recommendation***

**WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER.** *See Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989).

The District Court will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the Magistrate Judge in the first instance. *See  Paterson–Leitch Co. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985, 990-91 (1st Cir. 1988)*.

*Finally, the parties are reminded that, pursuant to W.D.N.Y.  L.R.Civ.P. 72(b), written objections "shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority."* **Failure to comply with these provisions may result in the District Court's refusal to consider the objection.**

SO ORDERED.


Dated:      September 12, 2023
            Buffalo, New York


MICHAEL J. ROEMER
United States Magistrate Judge